[Crim. No. 3454.   Second Dist., Div. One.   Sept. 12, 1941.]

THE PEOPLE, Respondent, v. FRANK HOWARD, Appellant.

Frank Howard, *in pro. per.*, for Appellant.

Earl Warren, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

YORK, P. J.—A jury trial having been waived, the court found appellant guilty of the crime of forgery, as charged in an amended information, which also alleged five prior convictions: the first for forgery; the second, fourth and fifth for issuing checks without sufficient funds, and the third for attempted robbery. Appellant admitted the first, second, third and fifth prior convictions, and the fourth was dismissed upon motion of the district attorney.

This appeal is prosecuted from the judgment of conviction and from the order denying appellant's motion for a new trial upon the following grounds: (1) the evidence is not sufficient to support the verdict; (2) the verdict is contrary to the evidence; (3) the court erred in denying appellant leave to substitute counsel of his own choosing and in the admission of evidence; (4) misconduct of the prosecuting attorney.

It is indicated by the evidence adduced at the trial that appellant had been paroled from Folsom Prison; that J. M. Higman, president of the Reliable Lumber, Inc., located at Rosemead, California, had signed appellant's parole papers and during the months of April and May, 1940, provided him with sleeping quarters which were adjacent to the office of the said lumber company. The check-book of the company was kept in a desk in the office and it contained checks signed in blank by Mr. Higman upon which were printed the names ''Bank of America, El Monte Branch,''

and "Reliable Lumber, Inc." On September 10, 1940, the company's auditor discovered that three of these signed checks were missing from the said check-book. It appears also that during the convention of the Veterans of Foreign Wars held during the latter part of August, 1940, appellant, who was a member of the military police detail of that organization, became acquainted with Mr. Morey C. Serf, district manager of Seagram's Distilleries Corporation. Mr. Serf testified that in September of 1940, appellant inquired of him if he could obtain through a wholesaler some liquor for use at a committee meeting. Appellant presented to Mr. Serf a check made in favor of the Seagram corporation, but Mr. Serf declined to accept it, stating that the sale was not a Seagram transaction and therefore the check should be made payable either to him (Serf) or the distributor. Appellant left Serf's office and returned in about two hours and presented to him the check involved in this case, to-wit: Reliable Lumber, Inc., No. 2967, for $100 signed by J. M. Higman, drawn on the El Monte branch of the Bank of America, with the name of the payee blank. Mr. Serf took the check and wrote in his own name as payee and sent appellant to a wholesale distributor to procure the liquor. Mr. Serf cashed the check while in San Diego a few days later and it was thereafter charged to the account of the lumber company by the bank upon which it was drawn. Mr. Higman testified he had not authorized appellant to fill in the check or to remove it or any other checks from the check-book.

When appellant was arrested on October 20, 1940, in the office of the state parole officer, he admitted that he gave the check to Mr. Serf for some whiskey and some cash, but denied that he had written or passed the check. In a conversation he had with the arresting officers, appellant said, "I believe that the party that made out this check used a typewriter in the offices of the V. F. W., in Mr. Brinkmeyer's office in the Lane Mortgage Building. . . . I believe you will find that the party who made out the check might have used a check protector at the Gene Palmer Cosmetic Company," and gave the officers the address of said company.

It was further developed by the evidence that in September, 1940, appellant was assisting with some reorganization work for the Gene Palmer Cosmetic Company, and was in and out of the office of that company for three or four weeks;

that a check protector and an Underwood Noiseless Type-writer were kept on a desk in said office; that this check protector was turned over to Deputy Sheriff Gompert, who for twelve years had had charge of the sheriff's research laboratory maintained for the purpose of "examination, classification and identification of physical evidence."

Mr. Gompert testified it was his opinion that the words "Exactly $100 Exactly" appearing on the check, which was introduced in evidence and marked Exhibit 1, were written by the check writer (Exhibit 2) which was delivered to him by Deputy Sheriff Law on October 22, 1940. He also testified that on October 23rd, he compared and analyzed the typewriting on the check and was of the opinion that it was written by the typewriter (Exhibit 3) which was identified as the Underwood Noiseless Typewriter which was in the office of the Gene Palmer Cosmetic Company from August 1, 1939, to October 21, 1940, under a rental contract with the Office Appliance Company of 6266 Hollywood Boulevard.

Appellant took the stand in his own defense and identified Exhibit 1 as the check which he gave to Mr. Serf for $10 cash and $104 worth of liquor, but he claimed that he received the check on September 23, 1940, from one Earl F. Wallace, a man he said he had met during the V. F. W. encampment held August 25th to 30th, 1940, and for whom he negotiated the purchase of liquor through Mr. Serf. He also testified that said Wallace accompanied him to the Gene Palmer Company's office and to the office of the Veterans of Foreign Wars where three typewriters were maintained, and that Wallace had opportunity to use both the typewriters and the check protector. Mr. Wallace was not produced as a witness, and by stipulation of counsel the report of T. E. Eckert, an investigator, to the effect he was unable to locate said Wallace, was read into the record.

In connection with his first point, appellant contends that "the State has utterly failed to prove that he did not come into possession of the check in question innocently, and did not so hand it to Morey Serf."

The testimony presented by the record herein is a complete demonstration of appellant's guilt of the offense charged against him, and leaves no doubt in our minds that the verdict is amply supported. (*People* v. *Collins*, 60 Cal. App. 263, 267 [212 Pac. 701].)

With respect to appellant's second point, the intent to defraud and appellant's knowledge of the fictitious character of the check were questions for the court, and such intent and knowledge were facts which might reasonably have been inferred from the circumstances shown by the evidence. (*People* v. *Roche,* 74 Cal. App. 556, 559 [241 Pac. 279], and cases there cited.)

A careful examination of the record in this case satisfies us that it is free from error, and that appellant's third and fourth points are entirely without merit.

For the reasons stated, the judgment and order are, and each of them is, affirmed.

Doran, J., and White, J., concurred.