[Crim. No. 3852. Second Dist., Div. Three. May 15, 1945.]

THE PEOPLE, Respondent, v. VICTOR G. FERRATO, Appellant.

Gladys Towles Root for Appellant.

Robert W. Kenny, Attorney General, and Everett W. Mattoon, Deputy Attorney General, for Respondent.

DESMOND, P. J.—The defendant was convicted by a jury of second degree robbery and appeals from the judgment and sentence as well as from the order of the court denying his motion for new trial.

His claim that a reversal is in order rests upon three points: that he was not sufficiently identified as the perpetrator of the crime charged against him, that his attempted proof of an alibi should have raised a reasonable doubt as to his guilt, and by reason of inherent improbability this court should presume that the verdict was the result of passion or prejudice.

The crime of which the defendant was convicted occurred in broad daylight on February 21, 1944. The complaining witness, a Mrs. Reader, testified that at 4 o'clock p. m., she and her niece, Mrs. Simmons, had gone by automobile from her place of business on Central Avenue to a bank located at Avalon and Slauson Boulevards in the city of Los Angeles for the purpose of obtaining money with which to cash payroll checks. The two women entered the bank and obtained the sum of $26,000. Part of it they concealed upon their persons, but the sum of approximately $6,000 was placed in a manila envelope and was carried from the bank by Mrs. Reader. She and her niece went to the parking lot where their automobile had been left and entered it from the left hand side, Mrs. Reader moving under the steering wheel and over to the right side of the car. She was followed by Mrs. Simmons, who took her place behind the steering wheel. But, before she could close the door, the defendant slipped into the front seat of the car and pushed her over against her aunt, having his right hand in his pocket jammed up against Mrs. Simmons' side and his left hand held toward Mrs. Reader across Mrs. Simmons' lap, at the same time saying, "Girls, this is serious; hand that over," indicating the package which Mrs. Reader held in her arm. She testified that unconsciously she clutched the package to her and that the defendant said, "Hand that over if you don't want this girl killed." After that he reached and took the package out of Mrs. Reader's hand, left the car and ran in the rear of a nearby filling station, where he disappeared. He was arrested two days later in Las Vegas, Nevada, and returned to Los Angeles where he was arraigned in the superior court on March 22d. Meanwhile, he had given bail and had returned to his apartment at Huntington Park.

At his trial he testified that his place of residence was

approximately three miles from Slauson Avenue and Avalon Boulevard; that he was at home on February 21, 1944; that he got up that day about 10 o'clock in the morning, talked on the telephone in the hall of the apartment house where he lived to his employer, Gus Kallas, then returned to his apartment and went to bed and to sleep. He woke, according to his testimony, when the telephone rang about 4 or 4:10 o'clock and Mrs. Baker called him at that time. He stated that when he talked with Gus that morning he made arrangements to meet him at the home of his father and mother at 5 o'clock in the afternoon for the purpose of collecting $180 which Gus owed him; that he had been working for Gus, learning to tend bar, and decided to go to Las Vegas to obtain employment there; that Gus had let him off on February 21st and, after seeing him at the home of his parents and collecting the money that was due him, he left in his sister's automobile after 5 o'clock of the same day, and went to Las Vegas with a man named Cook. He denied that he had committed the robbery and stated that he had never seen Mrs. Reader or Mrs. Simmons until they appeared to testify against him at the preliminary hearing.

We have carefully examined the record in this case and find that while there were various inconsistencies or minor contradictions in the stories told by Mrs. Reader and her niece, on the two occasions when they appeared as witnesses against the defendant, first at the preliminary hearing and later at the trial in the superior court, these variances in their recitals were not such as to warrant a disbelief in the essential truth of their statements. They both testified that at the time of the robbery they noticed that the defendant had "flecks" in his eyes, which were described as "dark brown." The defendant produced as a witness an eye specialist who testified that he had examined the defendant and found that his eyes were normal, without flecks, spots or streaks. In this connection, we may note that the jury saw the defendant and had an opportunity to determine whether his eyes were in any way peculiar and, judging from the verdict, they must have decided that they had a peculiar characteristic which Mrs. Reader described as "flecks"; or, else they may have concluded that in the excitement of the robbery on the afternoon of February 21st his eyes sparkled in a peculiar way. The man who robbed Mrs. Reader had worn no hat and was under direct observation of both women and, so far as the record shows, they never

faltered or hesitated in their identification of this defendant as the guilty man. Mrs. Simmons was recalled as a rebuttal witness in behalf of the People and testified that she had been in the courtroom during the time the defendant had been on the witness stand, sitting approximately 25 feet from him in a position where she could see his face and watch his mannerisms; that she heard the defendant speak and testified that it was the same voice that she heard belonging to the man who got into the car on the afternoon of February 21st; that she noticed something about his manner of speaking that was similar to the manner that she observed concerning him that afternoon, namely, that he did not talk with his mouth open. . Mrs. Reader, as a rebuttal witness, testified that the voice she heard in the courtroom during the trial, while the defendant was on the witness stand and while she was observing him, was the same voice she heard on the afternoon of February 21st. We conclude from our study of the record that the contention of the defendant that he was not sufficiently identified as the perpetrator of the crime is not well grounded.

■ In regard to the appellant's claim that his offered defense of an alibi should have raised a reasonable doubt as to his guilt, we can only say that there is nothing in the record to sustain that claim. No alibi can be successfully established unless the jurors believe the witnesses who undertake to show that the defendant was absent from the scene of the crime at the time it was committed. Jurors are judges of the credibility of the witnesses produced and it is apparent from the verdict rendered in this case that they did not accept as accurate the testimony of the witnesses who undertook to establish an alibi for the defendant. There was nothing so convincing about the testimony of any of these witnesses as to compel a reasonable doubt to arise in the mind of a juror. In fact, the statement of Mrs. Baker that she awakened the appellant at 4 o'clock p. m., or shortly thereafter, on February 21st must have carried very little weight with the jury, as definitely fixing that important date, in view of the following colloquy when she was under cross-examination:

"Q. Did you have any way of keeping track of the dates on which you saw him and the date that you did not see him? A. Yes. Q. How did you do that? A. Because I remember all of the tenants that I see and all of the dates that I see

them, for I don't see them very often, because, after all, he pays his rent on the 11th and he comes over every month on the 11th, and I saw him on the 11th, and then I very seldom see him unless I answer the telephone or something like that, or if I happen to see him in the hall there. And if I happen to see him in the hall I will remember what date it is Q. You have 32 apartments occupied by—— A. Yes. Q. ——different numbers of people, I suppose, from two to four, or one to four? A. No, there is not over two in each apartment. I won't allow it. Q. And you can tell us on what date and what hour you have seen each one of those tenants; is that correct? A. Most of my tenants I see every day. Q. Just answer the question, please. A. No.''

As stated in *People* v. *Quinn* (1931), 111 Cal.App. 614, 621 [295 P. 1042], cited by appellant, ''The authorities in this state are unanimous in the declaration of the law that as to the 'defense' of alibi, if the defendant introduces sufficient evidence to raise a reasonable doubt as to his guilt, he is entitled to an acquittal.'' This is merely applying to a claimed alibi the old rule that to warrant a conviction the jury must be satisfied beyond a reasonable doubt of the guilt of the accused. It cannot in any manner be made to read that the suggestion of an alibi necessarily creates or should create a reasonable doubt in the minds of jurors. That, of course, must depend upon the character of the testimony adduced. And the appellant in this case failed to introduce sufficient evidence to raise the reasonable doubt which would have availed to acquit him.

The last remaining contention of the appellant that the court should presume that the verdict was the result of passion or prejudice because of the inherent improbability of the offense having been committed by defendant at the time and place alleged, is a contention and nothing more. No plausible argument can be advanced to sustain that claim for there was nothing inherently improbable about this robbery or the circumstances attending it.

The judgment and order are affirmed.

Shinn, J., and Wood (Parker), J., concurred.