[Crim. No. 7290. Second Dist., Div. One. Dec. 22, 1960.]

THE PEOPLE, Respondent, v. FRANK LOUIS LUIZZI,
Appellant.

Julian I. Harmon for Appellant.

Stanley Mosk, Attorney General, and George W. Kell, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was convicted by a jury of four counts of forgery, all alleged to have occurred on the same day and involving the same amount. Each count charges forgery and uttering in violation of section 470, Penal Code. From the judgment of conviction and order denying his motion for new trial defendant appeals. He contends that the People failed to prove "the elements of the crime of forgery as specifically alleged in the information," that the deputy district attorney committed prejudicial error in cross-examination, that Officer Woodring was biased and prejudiced against him, and that there is insufficient evidence to support the jury's verdicts.

"Where there is substantial evidence in support of

the jury's determination it must be upheld." (*People* v. *Caritativo*, 46 Cal.2d 68, 72 [292 P.2d 513]; *People* v. *Eggers*, 30 Cal.2d 676 [185 P.2d 1]); applying this rule and viewing the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the judgment (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Crooker*, 47 Cal.2d 348 [303 P.2d 753]; *People* v. *Kerr*, 37 Cal.2d 11 [229 P.2d 777]), we are satisfied that the evidence hereinafter set forth is more than ample to sustain the jury's verdicts.

All checks (Exs. 1 through 4) were dated and passed in various food markets the same day, August 28, 1959; each bore the name of Richard B. Bardwil as the drawer, Joseph G. Carr, as the payee, and on the reverse side the endorsement "Joseph G. Carr 4731 Waring Ave LA, Calif"; and each check was drawn for the sum of $88.78. Bardwil is an attorney at law with offices in the same building as that of defendant; the four checks (Exs. 1, 2, 3 and 4) are the check forms used by Bardwil in his law business; he is the only one authorized to sign his name to checks and the name "Richard B. Bardwil" on the face of each check is neither his signature nor in his handwriting and was not authorized by him; during the time in question Bardwil was away from his office attending the American Bar Convention and upon his return he was notified by his secretary and an associate that his check book was missing; Bardwil is acquainted with defendant, having represented him in a personal injury matter about three weeks before leaving for the convention; and defendant was in Bardwil's office several times during that period. It was established through an examiner of questioned documents and handwriting expert, from a handwritten exemplar (Ex. 5) which he asked for and received from the defendant and which defendant wrote in his presence, that the name "Joseph G. Carr" and the address on the back of each check were written by the same person who wrote Exhibit 5. In addition a second handwriting expert testified that in his opinion the endorsement on the reverse side of each check (Exs. 1, 2, 3 and 4), "Joseph G. Carr 4731 Waring Ave LA, Calif" was written by defendant who also wrote Exhibit 5.

In connection with Count I, Jack Goodman, manager of the Star Market in Monterey Park, identified defendant as the man who presented Exhibit 1 for payment and who represented himself as Joseph G. Carr, showing Goodman as identification a temporary driver's permit. Although Goodman authorized the check for encashment, he also directed Hatch,

an employee, to follow defendant and obtain his license number. Defendant was "in a hurry" and Hatch had to run to keep up with him. He followed him to his car and as defendant left he saw the license number, remembering only a portion of it, which he gave to Goodman. Goodman at the time wrote on the check "KZ7051." Hatch described the automobile as about a 1958 Cadillac, pink convertible, with white top, which description Goodman also recorded on the check. Hatch identified the man as the defendant. The check was dishonored by the bank.

As to Count II, Robert Sorenson, owner of Bob's Fine Foods in Rosemead, identified defendant as the man who early in the morning of August 28th or August 29th brought a check to him inside the front door of the market. Defendant asked him whom he should see to get a check "o.k.'d." Sorenson "o.k.'d" it with a small "R" and returned it to defendant; Harriet Tiner, a clerk, cashed the same and identified the man who presented it as the defendant. It was returned by the bank dishonored.

Relative to Count III, Exhibit 3 was presented to Rudolph Jaques, assistant cashier at the Cracker Barrel Market for encashment; he could not identify the person who presented the same but asked him for identification in the form of a driver's license and wrote on the back of the check "Temp. D/L" (temporary driver's license), its number and his own initials; the check carried the endorsement of "Joseph G. Carr" and the Waring Avenue address on the reverse side.

Concerning Count IV, Margaret Burkhart, an employee of Jim's Market in Montebello, was presented with Exhibit 4; she called the manager who "o.k.'d" the check; she cashed it and gave the man, whom she could not identify, $11.75 worth of groceries and the balance in cash, which she noted on the check with her initials.

At the time of his arrest, defendant told Officer Woodring at the former's office that he borrowed a Cadillac from a lady friend and it was not pink and white but red and white and he had used it in Monterey Park on August 28.

Defendant offered his own testimony and that of his wife and several others in an alibi defense. He testified that on August 28 he was in an all-day meeting with his business partners Carl Guerriero, Jack Thorpe, Matthew Fain and Nick Bufalino; denied that he had ever told Officer Woodring that a girl friend had loaned him her pink Cadillac or that he had ever borrowed a Cadillac for any purpose, that he had

anything to do with the checks and that he ever had a temporary driver's license in 1959; and said he owned a 1955 Cadillac convertible, license number KZC517. Guerriero, a used car dealer, testified concerning the meeting in his office on August 28, and that defendant was there all day on both the 28th and the 29th; Thorpe, a dealer in used horse trailers, and Fain, a motion picture actor, testified to the same effect.

Incident to his contention that the evidence is insufficient to support the jury's verdicts is appellant's primary claim that the evidence does not support the offense of forgery of a check as alleged in each count, and forgery of endorsement is not charged therein.

Each count of the information alleges that defendant on August 28, 1959, "did willfully, unlawfully, fraudulently and feloniously make, alter, forge and counterfeit a certain check and order in writing for the payment of money," in the sum of $88.78 and "did then and there utter, publish and pass the same, knowing that said check was false, altered, forged and counterfeited, with intent then and there to cheat and defraud" certain named persons, including Richard B. Bardwil and the Bank of America.

The crime of forgery as denounced by statute (Pen. Code, § 470) consists of either of two distinct acts—the fraudulent making of an instrument, such as a false writing thereof, or the uttering of a spurious instrument by passing the same as genuine with knowledge of its falsity (*People* v. *Lucas,* 67 Cal.App. 452 [227 P. 709]); and although both acts may be alleged in the conjunctive in the same count in the language of the statute, the offense does not require the commission of both—it is complete when one either falsely makes a document without authority or passes such a document with intent to defraud (*People* v. *Pounds,* 168 Cal.App.2d 756 [336 P.2d 219]; *People* v. *McKenna,* 11 Cal.2d 327 [79 P.2d 1065]; *People* v. *Morgan,* 140 Cal.App.2d 796 [296 P.2d 75]; *People* v. *Murrie,* 168 Cal.App.2d 770 [336 P.2d 559]), and the performance of one or both of these acts with reference to the same instrument constitutes but a single offense of forgery. (*People* v. *Frank,* 28 Cal. 507.)

Citing *People* v. *Thornburgh* (1906), 4 Cal.App. 38 [87 P. 234]; *People* v. *Cole* (1900), 130 Cal. 13 [62 P. 274]; *People* v. *Johnson* (1907), 7 Cal.App. 127 [93 P. 1042]; and *People* v. *Feldman,* 171 Cal.App.2d 15 [339 P.2d 888], appellant argues that an endorsement is no part of a check, that the evidence falls short of forgery of a check as charged and that

forgery of endorsement thereon is not alleged in the information. Appellant's position is not sound, for not only is the evidence such that the jury could properly infer that defendant forged the checks alleged and the proof unquestionably shows that he forged the endorsement on the reverse side of each, but under section 470, Penal Code, and the holding in *People* v. *Jones,* 12 Cal.App. 129 [106 P. 724] decided in 1909, forgery of endorsement is properly alleged in each count of the information. In defining forgery, section 470 specifies numerous instruments that may be the subject of that offense listing by name all kinds and character of writing; and it was early held in *People* v. *Jones,* 12 Cal.App. 129 [106 P. 724], that an "order for money" within the meaning of that section includes the endorsement of the name of the payee on the reverse side of the check. Said the court therein on page 132: "The indorsement of a check is equivalent to an 'order for money,' and therefore is included within section 470." In the instant case each count not only alleges forgery of "a certain check" but specifically includes therein forgery of "an order in writing for the payment of money."

The offenses of forgery of endorsement having been properly pleaded, we find the evidence overwhelming in its support of defendant's guilt. The minimum elements required to be proved in a charge of forging an instrument are the actual making of the false writing and the intent to defraud. (*People* v. *Whitaker,* 127 Cal.App. 370 [15 P.2d 883]; *People* v. *McDonald,* 16 Cal.App.2d 687 [61 P.2d 66].) Two handwriting experts established the endorsement on the reverse side of eàch check (Exs. 1 through 4), "Joseph G. Carr 4731 Waring Ave LA, Calif.," to be in the handwriting of the defendant; and from this and other evidence the jury had a right to infer that defendant intended to defraud someone. (*People* v. *Cullen,* 99 Cal.App.2d 468 [221 P.2d 1016]; *People* v. *Horowitz,* 70 Cal.App.2d 675 [161 P.2d 833]; *People* v. *Platt,* 124 Cal.App.2d 123 [268 P.2d 529].) Moreover, direct and circumstantial evidence supporting the conclusion that defendant presented the checks with their forged endorsements receiving therefor goods and cash, is an added circumstance for the consideration of the jury. (*People* v. *Brown,* 137 Cal. App.2d 138 [289 P.2d 880].)

As to proof that defendant forged the checks, he says there is none in the record and further, that People's handwriting expert would not give an opinion that defendant also wrote the name "Richard B. Bardwil" on the face of the

Exhibits 1, 2, 3 and 4. In addition to proof that defendant wrote the endorsement on the reverse side of each check, there is a mass of evidence, including the writings themselves and the repeated testimony of the same handwriting expert, that in examining defendant's known handwriting and the name "Richard B. Bardwil" he found many things that would point to the fact that defendant "could have written the name of Richard B. Bardwil on the face of People's Exhibits 1, 2, 3 and 4," from which the jury could properly infer that defendant also wrote the name of Richard B. Bardwil. However, even in the face of the record, the language of section 470 and the holding in *People* v. *Jones,* 12 Cal.App. 129 [106 P. 724], still insisting there is no proof that he forged the checks and that he was never charged with forgery of endorsement, appellant urges reversal of his conviction ignoring the fact that in each count of the information he is also charged with uttering. In addition to charging defendant with forgery of "a certain check" and endorsement, alleged as "an order in writing for the payment of money," he was also charged in the same four counts with uttering, publishing and passing "the same, knowing that said check was forged."

Although the word "same" standing alone might well refer to both the "certain check" and "an order in writing for the payment of money" (endorsement) as alleged, it is apparent from the following language therein, "knowing that said check was forged," that the utterance of the forged instrument was limited to "a certain check" and did not include the "order in writing for the payment of money" or the forged endorsement. Thus, using but not accepting appellant's premise, while each count on its face shows but a single offense of forgery—making and uttering the same instrument, a check (§ 470; *People* v. *Keene,* 128 Cal.App.2d 520 [275 P.2d 804] ; *People* v. *Leyshon,* 108 Cal. 440 [41 P. 480] ; *People* v. *Harrold,* 84 Cal. 567 [24 P. 106]), the proof supports not the making of the checks but only the making of the endorsements and the passing of both the forged endorsements and the forged checks; but inasmuch as defendant is charged only with uttering a forged check and the false making and passing do not in the pleading relate to the same instrument, two separate and distinct though related offenses, forgery of endorsement and utterance of a forged check, are alleged in the same count. Even if the record did not support the charge of forgery of the checks, it would be unnecessary to consider whether such pleading is actually duplicitous, for the matter was raised in

neither the court below nor in this court, appellant has asserted no injury therefrom, and a showing of prejudice is completely lacking (*People* v. *Steelik,* 187 Cal. 361 [203 P. 78] ; *People* v. *Adams,* 79 Cal.App. 373 [249 P. 536] ) ; in fact defendant acquired an advantage, for although the evidence shows defendant's guilt on both the making and uttering, two separate offenses, he was convicted of only a single crime of forgery on each count and received the penalty for one instead of two crimes which would have faced him had they been alleged separately.

To constitute forgery by uttering the checks in question, the evidence must show that they were in fact forged, that defendant presented them as true and genuine instruments, and that he knew them to be forged at the time he presented them and passed the same with intent to defraud. (*People* v. *Smith,* 103 Cal. 563 [37 P. 516] ; *People* v. *Chapman,* 156 Cal. App.2d 151 [319 P.2d 8] ; *People* v. *Pounds,* 168 Cal.App.2d 756 [336 P.2d 219].)

That the checks were not genuine but in fact forged, is established by the testimony of Richard B. Bardwil, the purported drawer, that he neither signed nor authorized anyone else to sign his name to them. (*People* v. *Whiteman,* 114 Cal. 338 [46 P. 99].) Thus they must have been signed by either the defendant or Joseph G. Carr, the payee, for no other person appears to have had anything to do with them. Handwriting experts have established that defendant wrote the endorsement ''Joseph G. Carr'' and the address on the reverse side of each check, and testified he could have written the Bardwil name; and it is a reasonable inference that defendant not only wrote the endorsement but also wrote Bardwil's name, particularly in view of the further evidence that he, by writing the endorsement, offering identification as such, presenting the check in each instance and accepting goods and money therefor, represented himself to be Joseph G. Carr. Defendant neither produced Joseph G. Carr nor explained his absence at the trial nor gave any explanation concerning how he obtained the checks or why he signed Carr's name (*People* v. *Murrie,* 168 Cal.App.2d 770 [336 P.2d 559] ), preferring to rest on his denial that he had anything to do with them, which defense the jury chose not to believe. Certainly the implication is strong that defendant not only knew the checks were forged and not genuine when he passed them, but that he himself wrote the name of Richard B. Bardwil without his authority; moreover, it is

fortified by evidence of other suspicious unexplained circumstances, to wit:—The four checks were all dated the same day (August 28, 1959), drawn in favor of the same payee, in the same amount and all purportedly for salary; around August 28 Bardwil's checkbook was stolen; the checks were all presented within a 24-hour period to food markets on defendant's forged endorsement whereby he represented himself to be Joseph G. Carr, the payee and endorser, receiving cash and/or merchandise therefor; and defendant's unexplained possession of all four checks (*People* v. *Cline,* 79 Cal.App.2d 11 [179 P.2d 89]; *People* v. *Smith,* 103 Cal. 563 [37 P. 516]; *People* v. *Pounds,* 168 Cal.App.2d 756 [336 P.2d 219]; *People* v. *Geibel,* 93 Cal.App.2d 147 [208 P.2d 743]; *People* v. *Murrie,* 168 Cal.App.2d 770 [336 P.2d 559].) The intent to defraud is a reasonable inference from the evidence that defendant knowingly employed the spurious checks to procure cash or goods from markets to which he presented them (*People* v. *Murrie,* 168 Cal.App.2d 770 [336 P.2d 559]; *People* v. *Tomlinson,* 35 Cal. 503; *People* v. *Brown,* 137 Cal.App.2d 138 [289 P.2d 880]), and from the fact defendant forged the endorsements thereon. (*People* v. *Cullen,* 99 Cal.App.2d 468 [221 P.2d 1016].)

On the issue of his identity as the person who presented the four checks, appellant relies upon the inability of the witnesses Jaques (Count III) and Burkhart (Count IV) to identify him, the asserted impeachment of the witness Sorenson (Count II), the alleged ''conflict of testimony'' of Goodman and Hatch (Count I), and the credibility of the alibi testimony of defendant and his witnesses. The basic difficulty with appellant's argument is that it is a factual one which could well have been made to the jury but has no place before this court, and it completely ignores the well-settled principle that the credibility of the witnesses, the weight of the evidence and the resolution of factual conflicts are all matters for the trier. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Chesney,* 72 Cal.App. 570 [237 P. 793]; *People* v. *Howard,* 46 Cal.App.2d 722 [116 P.2d 802]; *People* v. *Horowitz,* 70 Cal.App.2d 675 [161 P.2d 833]; *People* v. *Hopper,* 168 Cal.App.2d 406 [336 P.2d 28]; *People* v. *Murrie,* 168 Cal.App.2d 770 [336 P.2d 559].) Obviously the jury, as it had a right to do, believed the testimony of the two handwriting experts establishing defendant to have written the endorsement on the reverse side of each check, the prosecution witnesses, including Sorenson,

Goodman, Tiner and Hatch who positively identified defendant as the man who presented Exhibits 1 and 2, Jaques and Burkhart to whom Exhibits 3 and 4 were presented and Officer Woodring; and refused to accept the verity of defendant's testimony and that of his witnesses, rejecting his alibi defense.

As to the claimed deficiencies and conflicts in the identification testimony, it is the rule that identification is a factual question (*People* v. *Hightower,* 40 Cal.App.2d 102 [104 P.2d 378]) and weaknesses and inconsistencies, if any, in the testimony are matters of argument to be considered by the trier of fact and cannot properly be directed to this court (*People* v. *Williams,* 53 Cal.2d 299 [347 P.2d 665]; *People* v. *Farrington,* 213 Cal. 459 [2 P.2d 814]), unless the evidence of identification is so weak as to constitute no evidence at all (*People* v. *Kitrelle,* 102 Cal.App.2d 149 [227 P.2d 38]) or can be strictured as inherently impossible or incredible as a matter of law (*People* v. *McNeal,* 123 Cal. App.2d 222 [266 P.2d 529]; *People* v. *Hornes,* 168 Cal.App.2d 314 [335 P.2d 756]), neither of which is here present.

It was proved by eyewitnesses in their positive identification that defendant presented the two checks alleged in Counts I and II; as to Counts III and IV, handwriting experts established the fraudulent endorsement on the reverse side of the checks (Exs. 3 and 4) to be in defendant's handwriting, and the circumstances surrounding all four transactions—defendant's prior acquaintance with Bardwil, the theft of the latter's checkbook, the identity of address, the presence of defendant in Bardwil's office on occasions immediately prior to the theft of Bardwil's checkbook. defendant's possession of all four checks and the similarity of circumstances surrounding the presenting of each, support the conclusion that defendant was the person who presented the checks alleged in Counts III and IV. Defendant's denial and the testimony of his alibi witnesses did no more than create a conflict in the evidence that the trial court had the duty to resolve (*People* v. *Simpson,* 43 Cal.2d 553 [275 P.2d 31]; *People* v. *Ferrato,* 69 Cal.App.2d 176 [158 P.2d 573]; *People* v. *McNeal,* 123 Cal.App.2d 222 [266 P.2d 529]) and did so, against the defendant.

On direct examination defendant testified that when he was arrested he overheard Officer Woodring refer to him as a "wop" and class him with "jews and niggers." He claims that these references to him "are improper remarks."

Although his Point III (A.O.B. p. 14) is entitled "Bias and Prejudice of People's Arresting Investigating Police Officer Woodring," appellant offers no argument concerning the asserted bias and makes no showing that, or in what manner, if at all, the alleged bias of the arresting officer prejudiced or injured him.

Moreover it is apparent that whatever evidence was offered in this connection was offered only by defendant himself on direct examination. If the effect thereof was harmful, creating a bias in the minds of the trier, defendant is hardly in a position at this time to complain of it, having voluntarily submitted the evidence to the jury.

 Finally appellant claims that the deputy district attorney committed prejudicial error by questioning him concerning whether he consulted a handwriting expert.

The prosecution had produced two handwriting experts who testified in effect that defendant wrote the forged instruments; their comparison of the handwriting on the reverse side of the checks was made with the handwriting defendant had been asked to give on the exemplar (Ex. 5). On cross-examination the deputy district attorney queried defendant extensively about the conversation he had with the police officer relative to whether he wrote the checks, and defendant testified that he told the police officer concerning the handwritten exemplar "this is not my handwriting because you told me to write like this." The deputy district attorney then asked defendant if he at any time consulted an expert; defendant answered "yes," whereupon he asked him "did you find an expert who would come to court and testify that you did not make that writing, the writing that appears on the back of those checks?" Defendant answered, "I don't believe everything was submitted to this expert." The deputy district attorney asked the same question again and the trial judge sustained an objection thereto and immediately instructed the jury "to disregard the question and not to draw any inferences from it whatever." The court then, upon being asked by the deputy district attorney, said he thought the question was improper. Thereafter defendant sought to explain why he wrote Exhibit 5 as he did.

Any impropriety in asking if defendant found an expert who would testify that he did not write the endorsements, under the circumstances, appears to have been cured by the court's admonition to the jury (*People* v. *Osslo*, 50 Cal.2d 75 [323 P.2d 397]), particularly in view of defendant's

denial that the endorsements were in his handwriting and his assertions that the exemplar did not reflect his true hand due to the fact that he was told how to write. We fail to see under the overwhelming evidence supporting the implied finding that defendant wrote the endorsements, how the query could have prejudiced the defendant; certainly no miscarriage of justice resulted. In the circumstances, the rebuke and admonishment appear sufficient to cure any harm which might have resulted from the prosecuting attorney's question. (*People* v. *Osslo,* 50 Cal.2d 75, 101 [323 P.2d 397].)

For the foregoing reasons the judgment and order denying motion for new trial are affirmed; and the purported appeal from the sentence is dismissed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 15, 1961.