[No. C055070. Third Dist. Jan. 15, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
SHELLEY BERNICE KENEFICK, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I., II., and III. of the Discussion.

COUNSEL

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine G. Tennant, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MORRISON, Acting P. J.**—Defendant was convicted by jury of 18 counts of theft, burglary, selling securities by false statement, and forgery, with an aggravated white collar crime enhancement, and enhancements for taking property in excess of $150,000 in value, after she stole $890,000 from six victims, some elderly, while purporting to run an investment company. Sentenced to 16 years four months in prison, she appeals. She contends there is insufficient evidence to support three counts; the trial court erred in permitting a forensic accountant to testify that defendant ran a Ponzi scheme; two of the forgery counts should be vacated and the sentence on the remaining forgery counts should be stayed.

We find merit only in the last two contentions relating to the forgery counts. Multiple forged signatures on a single document constitute but one count of forgery. Two counts of forgery must be vacated. The sentence on the remaining forgery counts is stayed pursuant to Penal Code section 654 because the forgeries were part of a single course of action with a single intent. In all other respects, we affirm the judgment.

FACTS

*Defendant's Scheme*

Defendant had a business doing bookkeeping and tax returns. In 1999, she started Kenefick Investments. Beginning in 2000, six people, who were clients and friends, invested $890,000 in Kenefick Investments based on defendant's representations that she was going to invest in various real estate or business projects, including first deeds of trust. Some of the investors received promissory notes and one received deeds of trust that were forged. By August 2005, defendant stopped making payments to her investors and some of them went to the police.

Sue Tankersley, an investigative auditor with the Department of Justice, traced over 90 percent of the money invested and determined none of it was invested in real estate. Much of it went to defendant's personal account; defendant used the money to pay down personal lines of credit and to make payments to the Kenefick Ranch account, World Access Communications, and her husband's welding business. Some of the money was used to pay other investors. Instead of an investment company, Tankersley explained, defendant ran a Ponzi scheme, using new money to pay off old investors. The investors' money was not invested as promised. Any payments they received came from no source other than the victims themselves.

### Howard Transactions

Donald Howard had known defendant for 12 years. She did his accounting and they socialized; their families went on camping trips together. On one of these trips, around the campfire, defendant mentioned investing. Howard had some IRA's for retirement; they were invested in CD's (certificates of deposit) and getting only 1 or 2 percent interest. He mentioned to defendant that he would like to do something else, but he did not want to lose any money as he planned to live on the interest in retirement.

Howard was interested only in first deeds of trust; he told defendant she would not be interested because there was nothing in it for her. Defendant said she would charge a loan fee, collect payments and handle any foreclosure details. Defendant told Howard she had a friend who wanted to borrow $100,000; he would give a first deed of trust on his house, which was worth $250,000. Howard would receive 10 percent interest; defendant guaranteed he would be paid even if the borrower failed to make payments. Howard believed defendant as she was his accountant and friend.

In June 2001, when Howard was 64 years old, he invested $60,000 in Kenefick Investments. He believed he was entering a partnership with defendant, who was also investing $60,000. In return Kenefick Investments received a promissory note for $120,000, secured by a first deed of trust on property on Spyglass Court in Woodbridge, owned by Dennis and Susan Cunningham. Defendant told Howard it was not necessary for him to go to the title company; she would handle everything and bring him the papers to sign.

The Cunninghams did not borrow the money; their signatures on the note and deed of trust were forged.

Howard received interest payments of $500 per month on his investment. In December 2001, after Howard had turned 65, defendant offered him another investment opportunity. She had a friend who wanted to borrow $100,000 and would give a first deed of trust on his house on Wild Plum Way in Tracy worth $250,000. The interest rate would be 10 percent. Howard invested $100,000 from savings and received a promissory note in the amount of $100,000 from Kristina and Alexander Brachna, secured by a deed of trust.

Kristina Brachna and her husband Alejandro Gonzales had lived on Wild Plum Way; they had purchased the house with a loan from Wells Fargo Bank. They did not sign the Howard documents.

Howard continued to receive interest checks on his two investments with Kenefick Investments until August or September 2005, when a $500 check bounced. Defendant's secretary told him to redeposit it, but when he tried he was told the account was closed. He could not get in touch with defendant. He contacted Brachna who told him he did not have a deed of trust on her house. When Howard confronted defendant, she tried to convince him the documents were not false. Howard invested $160,000 and received some interest but none of his principal back.

In connection with these transactions, the jury convicted defendant of first degree burglary (Pen. Code, § 459) with a finding that the offense was violent because Howard was present (Pen. Code, § 667.5, subd. (c)(21)) (count 3), theft from an elder (Pen. Code, § 368, subd. (d)) and grand theft (Pen. Code, § 487, subd. (a)), with findings that defendant took property exceeding $150,000 in value (Pen. Code, § 12022.6, subd. (a)(2)) (counts 4 & 5), sale of securities by false statements (Corp. Code, § 25401) (count 6), and four counts of forgery (Pen. Code, § 470, subd. (a)) (counts 9, 10, 17 & 18).

### Brachna Transactions

Defendant did accounting work and taxes for Kristina Brachna, whose signature defendant forged on one of the notes given to Howard. Brachna had an inheritance invested with Edward Jones. Defendant mentioned her investment company. Defendant told Brachna she would receive 10 percent interest only for three years. Defendant would get 2 percent and manage the investment. Brachna had no concern about risk because she trusted defendant.

Brachna invested $80,000 in June of 2001 and another $85,000 the following April. Brachna received promissory notes from Kenefick Investments. At one point, Brachna asked for $10,000 of her principal back. It took a while, but in June 2005, she received it. About that time, it became more difficult to get

her monthly interest payments. In August, Howard called about the deed of trust. Brachna felt "like my world just dropped out. I kind of knew from that point that we were screwed." When Brachna went to see defendant to get her money, defendant gave her a sob story.

The jury convicted defendant of grand theft with an enhancement of taking property with a value exceeding $150,000 (count 7) and sale of securities by false statement (count 8).

### Valencia Transaction

Carolyn Valencia owned duplexes and defendant provided her accounting and tax services. After Valencia's husband died, she had $40,000 to invest. She spoke with defendant about investing in a housing development. Defendant told Valencia she would receive a monthly check of "free" money that she would not have to declare on her taxes. Valencia gave defendant $40,000 in February 2000, and received a promissory note. Valencia received about $300 per month until January 2002, when she got some of her principal back. Then her monthly payments were about $250 per month. They continued until June 2005; after that she could not reach defendant.

The jury convicted defendant of sale of securities by false statement (count 15) and grand theft (count 16).

### Kosta Transactions

The investor who lost the most was Nick Kosta; he lost $275,000. Defendant had provided him tax services since 1999. In January 2003, when Kosta was 68 years old, he invested $45,000 with Kenefick Investments for a housing development in Ripon. Defendant told him she knew a policeman who had inherited a house and wanted to get some money out; Kosta would get a first deed of trust securing the loan. He invested $85,000. Kosta did not receive any paperwork, but trusted defendant.

Defendant told Kosta he should invest in a Franklin money account. He did so and gave defendant deposit slips for that account. Kosta's wife, who had dementia, invested another $85,000 with defendant. After his wife's aunt died, Kosta transferred money from the Franklin account to an account at Edward Jones. His wife then wrote two checks to Kenefick Investments, for $20,000 and $40,000 from the Franklin account without his knowledge. Defendant told Kosta that Edward Jones had invested the $60,000. When Kosta spoke to the representative at Edward Jones, he was told there had been no investment. The $60,000 had been withdrawn from the Franklin

account and the money had to be transferred back to Franklin to cover the checks. Mrs. Kosta was uncertain about the investments. Kosta went to the police.

The jury convicted defendant of theft from the elderly, with an enhancement for taking property with a value exceeding $150,000 (count 1) and sale of securities by false statement (count 2).

### Allen Transactions

Defendant provided accounting and tax services for Colleen Allen from 1998 through 2003. Allen's grandmother died and left her an inheritance. Defendant had an investment business and told Allen she could invest in properties and receive 10 percent interest. Allen was completely relying on defendant; they did not discuss risk and Allen believed the investment was safe with a small risk of loss.

In June 2003, Allen made three investments of $40,000, $60,000 and $100,000. She received promissory notes from Kenefick Investments. There was a six-month delay in investing the funds. Allen was somewhat concerned, but she trusted defendant. She received payments when she asked for them. The interest was to go into a fund for payment of Allen's quarterly taxes. Allen's quarterly taxes were not paid and defendant went out of business. Allen never got her principal back and could not reach defendant.

The jury convicted defendant of grand theft with an enhancement for taking property valued in excess of $150,000 (count 11) and sale of securities by false statements (count 12).

### Munoz Transaction

Gabriela Munoz owned a roofing business with her husband. Defendant was her bookkeeper and friend. Defendant mentioned she had an investment company and told Munoz a gentleman from out of town needed $50,000 to start a business. Defendant also told Munoz she could get her principal back on 30 days' notice. In December 2003, Munoz gave defendant a check for $50,000. There was a contract which Munoz's husband signed, but defendant's secretary would not give them a copy of the contract. Munoz trusted defendant and thought it was a legal business.

Thereafter, whenever Munoz went to defendant's office, defendant was not there. Munoz did not receive her interest payment for January or February. She did receive checks for April, May and June. Eventually, the IRS began looking for Munoz, so she hired another accountant. She suffered a stroke

over the situation with defendant; her husband had not wanted to make the investment. She later found some of her paperwork scattered near Lodi Lake.

Defendant was convicted of sale of securities by false statement (count 13) and grand theft (count 14). In addition, the jury found an aggravated white collar crime enhancement. The theft charges were related felonies involving the taking of over $500,000. (Pen. Code, § 186.11, subd. (a)(2).)

*Securities Expert*

Douglas Gooding, senior corporations counsel for the Department of Corporations, testified as to what constitutes a security. He testified a security is an investment of money in a common enterprise with the expectation of profit to be derived from the services, skill, expertise or success of the person receiving the money. An investment contract is a security; it need not be in writing. The key is whether the investor turns money over to another because that person has expertise, skill, a plan or connections to derive a profit. The objective of the Department of Corporations is to protect the public from fraud and to promote full and fair disclosure. It is a violation of Corporations Code section 25401 to offer or sell a security with an untrue statement or the omission of a material fact. The core of securities law is to provide information to evaluate risk. Taking money from one investor to pay another is a classic Ponzi scheme and the failure to disclose it is a violation of law.

Gooding testified a promissory note can be a security. In his opinion, giving money for a first deed of trust on a house where the documents were fictitious is an investment contract or security. The reality of the transaction is that the investor is relying on the skill of the person who took the money. A note secured by a genuine mortgage is not a security. The four considerations in determining whether something is a security are: (1) raising money for a common enterprise; (2) common trading of the instrument; (3) reasonable expectations of the investing public; and (4) whether another regulatory scheme reduced the risk of investment rendering application of securities law unnecessary.

## DISCUSSION

### I.–III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 114.

## IV. *Forgery—Counts 9, 10, 17 and 18*

### *Was Defendant Properly Convicted of Four Counts of Forgery?*

Relying on *People v. Ryan* (2006) 138 Cal.App.4th 360 [41 Cal.Rptr.3d 277], defendant contends there can be only one count of forgery per instrument. Accordingly, she asserts, one count of counts 9 and 10 and one count of counts 17 and 18 must be vacated. We agree.

■ Defendant was charged with four counts of forgery under Penal Code section 470, subdivision (a). Penal Code section 470, subdivision (a) provides: "Every person who, with the intent to defraud, knowing that he or she has no authority to do so, signs the name of another person or of a fictitious person to any of the items listed in subdivision (d) is guilty of forgery." Subdivision (d) lists a promissory note as one of the documents. Each count alleged defendant "did willfully and unlawfully with the intent to defraud, and knowingly without authority to do so, sign the name of another person and of a fictitious person," followed by the name of the person whose signature was forged. Count 9 was Kristina Brachna; count 10 was Alejandro Gonzalez; count 17 was Dennis Cunningham; and count 18 was Susan Cunningham. The forged documents were the promissory notes. These notes, along with a deed of trust and lender's escrow instructions, were presented to Howard to show his investment was secured.[1]

In *People v. Ryan, supra,* 138 Cal.App.4th 360, the defendant was convicted of four counts of forgery: two under Penal Code section 470, subdivision (a) and two under subdivision (d), which makes it a crime to make, alter, forge, counterfeit or pass as true and genuine any of certain documents. Counts V and VII were based on the defendant signing Cynthia Carter's name to a check and using it to make a purchase at Staples. Counts VI and VIII were based on signing Carter's name to another check and attempting to use it to make a purchase at Gypsy Rose Antiques. (138 Cal.App.4th at p. 364.) The defendant contended she could not be convicted of counts V and VI and the appellate court agreed. (*Ibid.*)

Previously, the various acts constituting forgery were not set forth in different subdivisions, but "were amassed in an undifferentiated, confusing recitation." (*People v. Ryan, supra,* 138 Cal.App.4th at p. 364.) The cases held there was but one act of forgery even though multiple acts were committed with respect to the same instrument. (*Id.* at p. 366.) Thus, in

---

[1] Exhibit 30B includes a page from a deed of trust purportedly given by the Brachnas. The page is not signed.

*People v. Frank* (1865) 28 Cal. 507, the court noted forgery could be committed in various ways including falsely making, altering, counterfeiting, and passing. "Now, each of these acts singly, or all together, if committed with reference to the same instrument, constitute but one offense. Whoever is guilty of either one of these acts is guilty of forgery; but if he is guilty of all of them, in reference to the same instrument, he is not therefore guilty of as many forgeries as there are acts, but of one forgery only." (*Id.* at p. 513.) In *People v. Leyshon* (1895) 108 Cal. 440 [41 P. 480], the defendant forged two names to a promissory note and then passed it as genuine. There was but one offense. (*Id.* at pp. 442–443.)

The rule of one count of forgery per instrument is in accord with the essence of forgery, which is making or passing a false document. "The crime of forgery as denounced by statute (Pen. Code, § 470) consists of either of two distinct acts—the fraudulent making of an instrument, such as a false writing thereof, or the uttering of a spurious instrument by passing the same as genuine with knowledge of its falsity [citation]; and although both acts may be alleged in the conjunctive in the same count in the language of the statute, the offense does not require the commission of both—it is complete when one either falsely makes a document without authority or passes such a document with intent to defraud [citations], and the performance of one or both of these acts with reference to the same instrument constitutes but a single offense of forgery. [Citation.]" (*People v. Luizzi* (1960) 187 Cal.App.2d 639, 644 [9 Cal.Rptr. 842].)

The *Ryan* court found the 1998 revision of Penal Code section 470 did not change the law, but was intended simply to make the laws governing financial crimes more "user friendly." (*People v. Ryan, supra*, 138 Cal.App.4th at pp. 366–367.) We conclude that the doing of one or more of the proscribed acts, with respect to the same instrument, constitutes but one offense. (*Id.* at p. 367.) The court vacated the convictions on counts V and VI. (*Id.* at p. 372.)

In *People v. Martinez* (2008) 161 Cal.App.4th 754 [74 Cal.Rptr.3d 409], the court held forging two signatures on a deed of trust constituted only one count of forgery under Penal Code section 470, subdivision (d). The court made clear its holding was limited to multiple convictions under subdivision (d) of Penal Code section 470 and left open the question whether multiple convictions were permissible under subdivision (a) or (b). (161 Cal.App.4th at p. 762, fn. 3.) Since those subdivisions made it a crime to sign another person's name, "it is at least arguable that these subdivisions are violated each time a person makes and/or passes a forged signature, even if only a single document is involved." (*Ibid.*)

We believe this question was answered in *Ryan*, which held the revision of Penal Code section 470 did not change the law. "The overhaul of

section 470 . . . was not intended to 'change the meaning or legal significance of the law,' but ' "merely [to] organize[] the relevant code sections into a cohesive and succinct set of laws that can be readily referred to and understood." ' [Citation.]" (*People v. Ryan, supra*, 138 Cal.App.4th at p. 366.) Thus, the old rule of one count of forgery per document continues and there cannot be multiple convictions based on any subdivision of Penal Code section 470 where only one document is involved.

In arguing the multiple convictions are proper, the Attorney General claims defendant forged signatures on multiple documents, notes, deeds of trust, and escrow instructions and the forged signatures included those of her husband. Defendant was not charged with forging the signature of her husband, only those of Brachna, Gonzales, and the Cunninghams. As noted above, the only documents with these forged signatures were the two notes.

Since there were only two forged documents, there can be but two counts of forgery. We vacate the convictions for counts 10 and 18.

## V. *Penal Code Section 654*

### *Should the Sentences on Counts 9 and 17 Be Stayed?*

Defendant contends she could not be punished separately for forgery in counts 9 and 17 because the forgeries were part and parcel of the theft, securities fraud, and burglary. She had a single criminal intent—to take Howard's money. We agree.

■ Penal Code section 654 prohibits multiple punishments for a single act or omission which may be "punishable in different ways by different provisions" of the Penal Code. Section 654 applies not only where there is but one "act" in the ordinary sense, but also where there is an indivisible course of conduct. (*People v. Beamon* (1973) 8 Cal.3d 625, 637 [105 Cal.Rptr. 681, 504 P.2d 905].) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839], affirmed in *People v. Latimer* (1993) 5 Cal.4th 1203, 1205 [23 Cal.Rptr.2d 144, 858 P.2d 611].) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise

indivisible course of conduct.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].)

In *People v. Curtin* (1994) 22 Cal.App.4th 528 [27 Cal.Rptr.2d 369], the defendant was convicted of burglary and forgery after he entered a bank and cashed a forged check. On appeal the Attorney General conceded sentence on the forgery count should be stayed under Penal Code section 654 because the forgery and burglary were part of an indivisible transaction, committed with a single criminal intent of cashing the check. (22 Cal.App.4th at p. 532.)

Defendant contends she harbored a single criminal objective in committing forgery and theft, securities fraud and burglary with respect to the Howard transactions; the single criminal intent was to steal Howard's money. She contends the forgery was simply the means by which she accomplished her theft.

The Attorney General notes that the crime of forgery, unlike theft, is not concerned with the end (the taking), but the means (signing another's name). (*People v. Neder* (1971) 16 Cal.App.3d 846, 852–853 [94 Cal.Rptr. 364].) The Attorney General contends defendant used forgery not simply to take Howard's money but also to conceal her theft and fraud. Further, her first forgery of the Cunningham documents permitted her to commit the second theft involving the Brachna note. The Attorney General relies upon *People v. Kronemyer* (1987) 189 Cal.App.3d 314 [234 Cal.Rptr. 442]. We find that case distinguishable.

In *People v. Kronemyer, supra*, 189 Cal.App.3d 314, an attorney stole from an elderly client and subsequently committed perjury in conservatorship accountings. The court held section 654 of the Penal Code did not bar punishment on both the theft and perjury charges. The perjury had a separate criminal objective of obtaining appointment as conservator of the client's estate. (*Kronemyer*, at p. 367.) "It is only tangential to his ability to conceal the already completed thefts of the savings accounts." (*Id.* at p. 368.) The court distinguished *Burris v. Superior Court* (1974) 43 Cal.App.3d 530 [117 Cal.Rptr. 898], where the defendant was convicted of perjury, unlawful practice of law and grand theft. "There, there was but one objective, to steal, and the perjury and unlawful practice of law were merely preliminary steps in the plan toward that goal." (*Kronemyer, supra*, at p. 368.) This case is like *Burris*; the forgeries were preliminary steps in the plan to steal Howard's money.

Sentence on counts 9 and 17 should be stayed.

## DISPOSITION

The convictions on counts 10 and 18 are vacated and the sentence on counts 9 and 17 is stayed. In all other respects, the judgment is affirmed. The trial court is ordered to prepare a new abstract of judgment reflecting these changes and to forward it to the Department of Corrections and Rehabilitation.

Robie, J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 22, 2009, S170668. Corrigan, J., did not participate therein.