[No. A055570. First Dist., Div. Two. July 29, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ANITA MARIE SUTHERLAND, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

## COUNSEL

Michael L. Mock, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald A. Niver and Clifford K. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BENSON, J.—Anita Marie Sutherland (defendant) appeals from the judgment after a jury convicted her of forgery (Pen. Code, § 470), burglary (Pen. Code, § 459), and soliciting a minor to commit a felony (Pen. Code, § 653j).[1] She argues the judgment must be reversed because the court failed to give proper jury instructions, because the prosecutor committed prejudicial misconduct, and because she was deprived of her right to cross-examine when the court allowed the reading of preliminary examination testimony of a witness who died before trial began. In addition, she claims sentencing error. We affirm in part, reverse in part, vacate the sentence and remand for resentencing.

I.

FACTS

*The Offenses*

In essence, defendant was charged with forging and passing a number of checks at businesses in her community. For clarity, we summarize the testimony relating to each transaction separately and in the order the transactions occurred.

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

### 1.  First Shop Smart Transaction (Count 4, Forgery)

In December 1990, defendant's daughter, Cheri Sutherland, saw defendant with a State of California warrant dated December 19, 1990, payable to Rachel Allen. Later, she saw defendant sign Rachel Allen's name on the back of the warrant; when she had seen it before, the back was blank. Sometime in December 1990, defendant and Cheri Sutherland went to a store called the "Shop Smart," where, after collecting a few groceries, they presented the check. Cheri Sutherland testified that defendant handed the check to the clerk, but the clerk testified Cheri Sutherland made the transaction. Cheri Sutherland signed the check and presented her driver's license; the clerk copied the driver's license number onto the front of the check. The clerk testified that both defendant and Cheri Sutherland repeatedly assured her the check was good. Defendant testified she had not gone to the "Shop Smart" to cash the checks, but had unexpectedly met Cheri Sutherland there once in February. She testified she did not tell the store clerk the check was good. The jury found defendant guilty of one count of forgery in connection with this transaction.

### 2.  Sentry Market Transaction (Count 3, Forgery)

In connection with this count, of which defendant was acquitted, Cheri Sutherland testified that sometime in December 1990 she saw Bob Williams, who had lived with defendant for five or six years at the time of trial, take a State of California warrant payable to Rachel Allen out of his wallet and give it to defendant. Cheri Sutherland testified defendant told her she had gotten the check out of Cheri Sutherland's mother-in-law's mailbox. Cheri Sutherland testified she intended to cash the check and discussed that purpose with defendant before going to the store. She testified she, defendant and Bob Williams went to the Sentry Market and exchanged the check for groceries and cash after Williams signed the back of the check with Rachel Allen's name. Cheri Sutherland testified that she had acted on defendant's instructions and had used her sister-in-law's driver's license as identification. She had gotten the driver's license from defendant, who gave it to her and told her if she used it, she would not get in any trouble. Both defendant and Bob Williams testified they knew nothing of the transaction. The jury found defendant not guilty on this forgery count.

### 3.  Crescent Tire and Wheel Transaction (Counts 1 and 2, Forgery and Burglary)

On February 14, 1991, Cheri Sutherland saw a preprinted check drawn on the account of Mary Lou Dyer at defendant's house. She testified the check

was completely filled out payable to Crescent Tire and Wheel. Defendant told Cheri Sutherland that Dyer had loaned her money to buy tires. While Cheri Sutherland was there, defendant called Crescent Tire and Wheel. After that, Cheri Sutherland took the check to Crescent Tire and Wheel, where she used it to purchase two tires for defendant's car. Jesse Reynolds, the owner of Crescent Tire and Wheel, testified he received two phone calls. The first was from a woman who identified herself as Mary Lou Dyer, who inquired how much the tires would cost. The second was purportedly from Mary Lou Dyer's granddaughter, who asked if he would accept her check. He also testified the woman who came to have the tires installed was Jeannie M., defendant's granddaughter; he was contradicted by his wife Laura Reynolds, who testified the purchaser was Cheri Sutherland.

Mary Lou Dyer testified at the preliminary examination, but died before trial. The bulk of her testimony was read to the jury. Relevant here, she testified she had ordered a quantity of preprinted checks from her bank before moving to a new address. Defendant moved into Dyer's old house before the checks arrived. Dyer testified she never received the checks. Dyer identified the check given to Crescent Tire and Wheel as of the kind she ordered but testified she had not made out or signed the check, nor had she given defendant permission to sign her checks. Cheri Sutherland testified defendant showed her the box of checks; later, she saw defendant burn all but one of the books of checks.

Defendant testified she neither called Reynolds nor wrote the check to Crescent Tire and Wheel. She also testified she never had any of Mary Lou Dyer's checks. Defendant was charged with and convicted of one count of forgery (count 1) and one count of burglary (count 2) in connection with the Crescent Tire and Wheel transaction.

4. *Second Shop Smart Transaction (Counts 7 and 8, Forgery and Burglary)*

Cheri Sutherland testified she saw defendant make out one of Mary Lou Dyer's checks to "Shop Smart." On February 16, 1991, she and defendant went to the "Shop Smart" to cash the check. She did not see defendant sign the check; she thought Bob Williams did. When they reached the cashier at the "Shop Smart," defendant presented the check, but Cheri Sutherland gave her driver's license to the clerk. Cheri Sutherland testified defendant purposely avoided using her own driver's license. Bob Williams denied any participation; defendant testified she did not go to the "Shop Smart" and did not help Cheri Sutherland cash the check. In connection with this "Shop Smart" transaction, defendant was convicted of one count of forgery (count 7) and acquitted of one count of burglary (count 8).

608

## 5. *Sprouse-Reitz Transaction (Counts 5 and 6, Forgery and Burglary)*

Also in mid-February 1991, Cheri Sutherland again saw a completed check drawn on Mary Lou Dyer's account at defendant's house. The check was made to "Sprouse-Reitz." Cheri Sutherland and defendant went to the Sprouse-Reitz store, where they used the check to buy videotapes. Defendant testified she had never possessed the check used at Sprouse-Reitz. Based on this transaction, defendant was charged with forgery and burglary. The jury found her guilty of the forgery (count 5), but acquitted her of the burglary (count 6).

## 6. *Darby Market Transaction (Counts 9 and 10, Soliciting and Burglary)*

Defendant's granddaughter, Jeannie M., testified she was at defendant's house when defendant got a check out of a "little box," wrote on it, and gave it to her to go to the "Darby Market" to buy soda and gum. The check was one of those bearing Mary Lou Dyer's name. Jeannie M. testified that before she left the house, defendant called someone, identified herself as Mary Lou Dyer, and said she was sending her granddaughter to cash a check. Jeannie M. testified she rode her bicycle to the market where she told the clerk she had earned the money; she then cashed the check. At the time of the transaction, Jeannie M. was 13 years old.

The store clerk at the Darby Market testified she knew Jeannie M. and took the check from her on the day in question. Before Jeannie M. had arrived at the market, the clerk had received a telephone call from a person who identified herself as "Mary" and explained that her granddaughter would be coming in with a check. The clerk asked Jeannie to write her address and telephone number on the check; Jeannie M. put defendant's address and number on it. When the clerk asked Jeannie M. if she had cashed checks for the same person before, Jeannie M. told her the author of the check was her grandmother.

Defendant testified that she neither made out the check nor sent Jeannie M. to the market with it. Without objection, she testified she overheard Cheri Sutherland tell Jeannie M. to go to the store. After Jeannie M. returned, she heard Jeannie M. tell Cheri Sutherland's sister, Sheryl Miller, that her mother made her cash the check. Based on those conversations, defendant testified she believed Cheri Sutherland had arranged for Jeannie M. to cash the check. Her versions of these conversations were confirmed by Sheryl Miller and by Bob Williams. Based on the Darby Market transaction, defendant was charged with and convicted of soliciting a minor to commit a burglary (count 9), and of burglary (count 10).

*Witness Impeachment*

There was extensive impeachment of both prosecution and defense witnesses.

Sheryl Miller, defendant's daughter and Cheri Sutherland's sister, testified Cheri Sutherland was unreliable, had mental and drug problems, and had forged other documents in the past. Eleanor Lopez, a drug and alcohol rehabilitation counselor, testified that she knew both Cheri Sutherland and Jeannie M. well and that neither of them was truthful.

Robert Sutherland, defendant's son, testified that Bob Williams had lied when defendant told him to. He testified that defendant often lied to him. Robert Sutherland also admitted to more than two prior theft convictions and testified his memory was poor because he had been a marijuana user. He testified that defendant had falsely accused him of receiving stolen property and selling it a flea market and that the accusation prompted his testimony against defendant.

Bob Williams testified the Sutherland family was split into camps and that he was in defendant's camp. He testified that shortly before trial, defendant had obtained a restraining order to prevent some unspecified action by other family members.

Cheri Sutherland, the principal witness against defendant, admitted that she had pleaded guilty to four counts of forgery as part of a plea bargain, under which she agreed to testify against defendant in exchange for a promise she would be sentenced to felony probation and serve one year in the county jail. In addition, she admitted to a prior misdemeanor forgery conviction for which she was sentenced to 10 days in the county jail.

II.

DISCUSSION

*Unanimity*

In the opening brief, defendant raised instructional and other errors. After review of the record, we requested and received further briefing on whether the court erred by omitting an instruction that a jury must unanimously agree on which of the defendant's acts or omissions are the basis for findings of guilt on the charges. Because neither party raised the issue at trial, we now consider whether the court violated its sua sponte duty to

instruct on the point. (See *People* v. *Madden* (1981) 116 Cal.App.3d 212, 215-219 [171 Cal.Rptr. 897] [if applicable under facts, unanimity instruction must be given sua sponte].)

Defendant was charged with forgery in five of the ten counts in the information. Each of these five counts involved a single check, and was charged in the alternative, i.e., defendant was charged with both forging and uttering the check.[2] At the conclusion of trial, the jury was instructed with CALJIC No. 15.02, which informs the jury it may convict the defendant of forgery if satisfied beyond a reasonable doubt the defendant either forged the document in question, or the defendant uttered the document, or the defendant did both.[3] As to each forgery count, there was evidence from which the jury could have concluded that defendant participated in the forgery of the checks and, at different times and places, in uttering the same checks.

In support of counts 1 and 2, there was evidence that the check in question was completely filled out before Cheri Sutherland took it from defendant's house to the tire shop where it was passed. Count 4 was based on evidence that defendant forged Rachel Allen's signature on a state warrant at Cheri Sutherland's house, and then went to the Shop Smart to cash the warrant. Cheri Sutherland testified she first saw the check underlying counts 5 and 6 at defendant's house; when she saw it, it was completely filled out, and she and defendant then went to the store to cash it. Finally, counts 7 and 8 were supported by similar evidence that defendant first forged a check and then took it to a different location where she and Cheri Sutherland uttered it. Because this evidence could support a jury finding that defendant participated in separate acts of forging and uttering at different times and in different places, and because the verdicts make it clear the jury in some part

---

[2]The forgery statute is section 470 of the Penal Code, which provides in part that "[e]very person who, with intent to defraud, signs the name of another person, knowing that he or she has no authority to do so, or falsely makes, alters, forges, or counterfeits, any . . . check, . . . or any controller's warrant . . . or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above-named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person . . . is guilty of forgery." (Subd. (a).)

[3]The jury was instructed as follows: "[i]n this case the defendant is accused of forging the checks in question and also with uttering such instrument or document. The defendant may be convicted of forgery by proof of either the forging or the uttering of the forged instrument or document or of both such forging and such uttering." (See CALJIC No. 15.02 (5th ed. 1988).) (All further references to CALJIC instructions are to the 5th edition unless otherwise specified.) The jury was also instructed in effect that "forgery" consists of the falsification of a check with intent to defraud, while "utter[ing]" occurs when the defendant asserts to another by words or conduct that the forged check is genuine. (See CALJIC Nos. 15.00, 15.01.)

disbelieved the testimony to defendant's acts,[4] there was a possibility the jury could have convicted defendant despite a lack of " '. . . substantial agreement as to just what . . . defendant did . . . .' " (*People* v. *Melendez* (1990) 224 Cal.App.3d 1420, 1433 [274 Cal.Rptr. 599], quoting *United States* v. *Gipson* (5th Cir. 1977) 553 F.2d 453, 457-458; see *People* v. *Ramirez* (1987) 189 Cal.App.3d 603, 613 [233 Cal.Rptr. 645] [possibility of disagreement exists where the defendant is accused of a number of unrelated incidents, such that jurors may believe different parts of the testimony and yet all vote to convict the defendant].) Because this possibility existed, there is a question whether the trial court had a sua sponte duty to instruct the jury that it should have agreed on the acts or omissions upon which the forgery charges rested. (CALJIC No. 17.01; see, e.g. *People* v. *Madden, supra,* 116 Cal.App.3d 212, 219 [where possibility of nonunanimity, instruction must be given sua sponte].) Indeed, the editors of CALJIC have specifically suggested that where jurors are instructed that forgery may be committed either by forging, or by uttering, or both, a unanimity instruction must be given if "more than one act may constitute the crime." (See Use Note to CALJIC No. 15.02.) In response to our request for further briefing, defendant contends a unanimity instruction was required. Though the question is controversial, we reject the contention.

■ The right to a unanimous jury in criminal cases is guaranteed by the California Constitution. (Cal. Const., art. I, § 16; *People* v. *Jones* (1990) 51 Cal.3d 294, 321 [270 Cal.Rptr. 611, 792 P.2d 643].) It is obvious that if the guarantee of unanimity means anything, it means at a minimum that all the jurors must agree the evidence shows guilt of the charged offense beyond a reasonable doubt. However, the general statement that the jury must unanimously agree on guilt glosses a more difficult question. Guilt is a broad conclusion which depends on discrete legal and factual determinations, each of which is conceptually distinct. Thus, the question before us is, on what must the jurors agree, beyond the general conclusion of guilt? (*People* v. *Davis* (1992) 8 Cal.App.4th 28, 33 [10 Cal.Rptr.2d 381].)

■ It is established that some assurance of unanimity is required where the evidence shows that the defendant has committed two or more similar

---

[4]For example, count 3, charging forgery, was supported by Cheri Sutherland's testimony that defendant took a check payable to Rachel Allen from a mailbox, that Williams signed Allen's signature on the check, and that Williams, defendant and Cheri Sutherland planned and executed the uttering of the check together. Similar testimony by Cheri Sutherland that defendant filled out a check but did not sign it, and then went with Cheri Sutherland to the Shop Smart to pass the check supported count 7, which also charged forgery. In both cases, defendant and Williams denied any complicity in the forgeries. Despite the similarity of the testimony to the two transactions, the jury acquitted defendant on count 3 but convicted her on count 7.

acts, each of which is a separately chargeable offense, but the information charges fewer offenses than the evidence shows. (*People* v. *Kent* (1981) 125 Cal.App.3d 207, 213 [178 Cal.Rptr. 28].) The instruction is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed. For example, where the evidence proved several distinct episodes, any of which could have supported the defendant's conviction of a single count of bribery, a unanimity instruction was required. (*People* v. *Diedrich* (1982) 31 Cal.3d 263, 282 [182 Cal.Rptr. 354, 643 P.2d 971].) Similarly, a unanimity instruction was required where the defendant was charged in one count with passing 35 bad checks, because each check represented a potentially separate and independent offense, creating the possibility the jury might not have unanimously agreed that the defendant committed any single offense. (*People* v. *Ferguson* (1982) 129 Cal.App.3d 1014, 1020 [181 Cal.Rptr. 593].) The same problem has occurred in other areas, and it is generally agreed that under such circumstances, a unanimity instruction of some kind is required to ensure the defendant's constitutional right to a unanimous verdict. (See, e.g., *People* v. *Castro* (1901) 133 Cal. 11, 13 [65 P. 13] [multiple acts of rape over several months]; *People* v. *Crawford* (1982) 131 Cal.App.3d 591, 596 [182 Cal.Rptr. 536] [evidence showed defendant possessed several hand-guns, but only one possession charge brought]; *People* v. *McNeill* (1980) 112 Cal.App.3d 330, 335-336 [169 Cal.Rptr. 313] [multiple assaults]; *People* v. *Hatch* (1910) 13 Cal.App. 521, 534-536 [109 P. 1097] [embezzlements].)

■ However, though there is agreement that an instruction is required where the state of the evidence may lead the jury to convict the defendant of a single offense even though not all of them agree as to which of several offenses the defendant committed, the law is less clear where a single offense may be committed in a variety of alternative ways, and the state of the evidence allows the jury to disagree as to which alternative the defendant employed. The majority of decisions have concluded no unanimity instruction is required; however, there is a significant and troublesome discord where the legislatively prescribed alternative means of committing a single offense are so disparate that a rule allowing the jury to disagree as to the means employed appears to contradict the rule requiring jury unanimity. This apparent contradiction has led to controversy, both in California and elsewhere. A brief survey of law in this area illustrates the point.

California, like most jurisdictions, has followed the unanimity rule announced in *People* v. *Sullivan* (1903) 173 N.Y. 122 [65 N.E. 989] (hereafter, the *Sullivan* rule). (*People* v. *Chavez* (1951) 37 Cal.2d 656, 671-672 [234 P.2d 632]; and see e.g., *People* v. *Pride* (1992) 3 Cal.4th 195, 249 [10 Cal.Rptr.2d 636, 833 P.2d 643]; see generally, Annot. (1990) 75 A.L.R.4th

91, 98-104, §§ 3-4 [collecting cases].) ▮ Under that rule, where a statute prescribes disparate alternative means by which a single offense may be committed, no unanimity is required as to which of the means the defendant employed so long as all the members of the jury are agreed that the defendant has committed the offense as it is defined by the statute. It follows that even though the evidence establishes that the defendant employed two or more of the prescribed alternate means, and the jury disagrees on the manner of the offense, there is no infirmity in the unanimous determination that the defendant is guilty of the charged offense. The courts adhering to this rule explain that the apparent difference in means is actually no more than a difference in the legal theory under which the defendant is found criminally responsible for a single offense; such a difference does not affect the unanimous conclusion the defendant is guilty and therefore does not encroach on the constitutional requirement of unanimity. (See, e.g., *People v. Pride, supra,* 3 Cal.4th at pp. 249-250; and see *People v. Failla* (1966) 64 Cal.2d 560, 569 [51 Cal.Rptr. 103, 414 P.2d 39] [in burglary prosecution, jury need not agree on which of several felonies defendant intended to perform once within the subject dwelling]; *People v. Nor Woods* (1951) 37 Cal.2d 584, 586 [233 P.2d 897] [where defendant committed theft either by trick or false pretenses, it was immaterial whether the jury disagreed on the "technical pigeonhole" into which the theft fell].) ▮ Thus, under the *Sullivan* rule, in a first degree murder case presented on alternate theories of felony murder and premeditated murder, there is no requirement the jury agree on the legal theory of liability, even though there is disagreement as to whether the murder was committed in the course of another felony or premeditated (*People v. Chavez, supra,* 37 Cal.2d at p. 670), or disagreement as to which specific felony supports the charge where several are proven by the evidence (*People v. Pride, supra,* 3 Cal.4th 195, 249-250; cf. *People v. Failla, supra,* 64 Cal.2d at p. 569).

However, this apparently established principle has proven controversial in its application. Though there is general approval of the principle that unanimity is not required where the potential jury disagreement may be characterized as a dispute over applicable legal theory, it is clear that the application of the principle may sometimes result in a lack of unanimous agreement on the defendant's acts. This potential for jury disagreement on the specific acts for which the defendant is to be held criminally liable has led some courts to impose a unanimity requirement even though only one offense is involved, albeit an offense which may be committed in a number of different ways. The leading case on the point is *United States v. Gipson, supra,* 553 F.2d at pages 457-458. In *Gipson,* defendant was charged with selling or receiving a stolen vehicle. (*Id.* at p. 455.) The statute involved imposed criminal penalties against any person who "receives, conceals, stores, barters, sells or disposes of" a vehicle that person knows to be stolen. (*Id.* at p.

455, fn. 1; see 18 U.S.C. § 2313.) The court found that the policy underlying the unanimity rule required "substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." (553 F.2d at pp. 457-458.) In the view of the court, the statutory elements of 18 United States Code section 2313 could be divided into two "conceptually distinct" groups; first, receiving, concealing and storing, and second, selling, disposing and bartering. (553 F.2d at p. 458.) The court concluded that if allowed to find guilt where the evidence proved distinct acts in each category, the jury finding of the actus reus element of the offense could be less than " 'unanimous,' " because conviction was possible despite jury disagreement about what the defendant did. The court found that result unacceptable and reversed the defendant's conviction. (*Id.* at p. 459.)

Though the holding in *Gipson* appears inconsistent with the *Sullivan* rule, the principle which underlies the imposition of the unanimity rule in *Gipson* is apparently of constitutional dimension. Moreover, the problem addressed in *Gipson* has resulted in a sharp split in the California Courts of Appeal which has yet to be resolved by our Supreme Court.

First, in *Schad* v. *Arizona* (1991) 501 U.S. __ [115 L.Ed.2d 555, 111 S.Ct. 2491], a majority of the court agreed that due process imposes some limits on the degree to which a jury may be allowed to disagree on the specific conduct which constitutes a single offense. Specifically, all but one member of the court agreed that at a minimum, due process would not permit a state to convict anyone "under a charge of 'Crime' so generic that any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion, or littering, for example, would suffice for conviction." (*Id.* at p. __ [115 L.Ed.2d at pp. 566] (plur. opn. of Souter, J.); compare *id.* at p. __ [115 L.Ed.2d at p. 581] (dis. opn. of White, J.).) However, though there was agreement on the due process question, the members of the court could not agree how to apply the limitation on which they were agreed.

Justice Souter, writing for four members of the court, rejected *Gipson's* classification of alternative means into " 'distinct conceptual groupings' " as "too conclusory to serve as a real test" (501 U.S. at p. __ [115 L.Ed.2d at pp. 567-568]) to determine when a legislature's definition of a specific offense has impinged on a defendant's due process rights. Rather, Justice Souter stated broadly that where due process is used as "a measurement of the sense of appropriate specificity," courts should look to history and common practice; "[w]here a State's particular way of defining a crime has a long history, or is in widespread use, it is unlikely that a defendant will be able to

demonstrate that the State . . . has defined as a single crime multiple offenses that are inherently separate," but where "a freakish definition of the elements of a crime that finds no analogue in history or in the criminal law of other jurisdictions," a defendant will more easily be able to show a violation of due process absent some assurance the jury has unanimously agreed on the particular criminal act the defendant has committed. (*Schad* v. *Arizona, supra,* 501 U.S. at p. __ [115 L.Ed.2d at pp. 570-571] (plur. opn. of Souter, J.).)

The four dissenting justices, in contrast, would have found that while "a State is free to construct a statute [which criminalizes several alternative patterns of conduct] in this way, it violates due process for a State to invoke more than one statutory alternative, each with different specified elements, without requiring that the jury indicate on which of the alternatives it has based the defendant's guilt." (501 U.S. at p. at p. __ [115 L.Ed.2d at p. 581] (dis. opn. of White, J.).) Thus, though the majority of the court agreed there was some due process limitation on the degree to which a criminal statute may make disparate conduct alternative means of committing a single offense, it failed to resolve the more difficult problem addressed in *Gipson*; i.e., how to tell which combinations of statutory alternatives are permissible and which are not.

In California, the problem is brought to a head by the conflict between *People* v. *Melendez, supra,* 224 Cal.App.3d 1420 and *People* v. *Davis, supra,* 8 Cal.App.4th 28. In *Melendez,* the defendant and two accomplices committed a robbery. (*People* v. *Melendez, supra,* 224 Cal.App.3d at pp. 1423-1424.) The evidence showed defendant did not participate in the act of robbery itself but assisted his accomplices before and after the robbery. (*Ibid.*) In connection with the single charge of robbery, the prosecutor argued defendant could be found liable either as a conspirator or as an aider and abettor and told the jury it need not agree on which theory supported conviction. (*Id.* at p. 1425.) No unanimity instruction was given, and defendant contended on appeal that such an instruction was required. Acknowledging that a "jury is not required to agree on the specific 'theory' of guilt," the court nonetheless found the trial court should have given a unanimity instruction. Relying on *United States* v. *Gipson, supra,* 553 F.2d at pages 457-458, the court concluded that "[w]here a single crime can be proven by different theories based on different acts and at least two of these theories rely on different evidence, and where the circumstances demonstrate a reasonable possibility that a juror will find one theory proven and the other not proven but that all of the jurors will not agree on the same theory, a unanimity instruction must be given." (*People* v. *Melendez, supra,* 224 Cal.App.3d at pp. 1433-1434.) Accordingly, the court reversed the defendant's conviction because it was possible the jury did not agree as to whether

the defendant acted before the robbery as a conspirator or afterwards as an aider and abettor. (*Id.* at p. 1434.) By the logic of *Melendez,* we would be required to conclude a unanimity instruction was necessary in the case at bench as well, because as we have discussed, the jury could easily have been divided on the factual basis for defendant's conviction, i.e., agreed that the defendant violated the forgery statute but divided as to whether the defendant's criminal acts consisted of the forgery or the uttering of any specific check. However, as we discuss, we find that *Melendez* was wrongly decided, though we agree only in part with the reasoning that led the court to that conclusion in *People* v. *Davis, supra,* 8 Cal.App.4th 28.

In *Davis,* like *Melendez,* the defendant was charged with robbery. (*People* v. *Davis, supra,* 8 Cal.App.4th at p. 30.) On appeal, the defendant argued a unanimity instruction should have been given because the evidence proved either that he participated directly in the robbery, or that he did no more than drive the getaway car. As in *Melendez,* the defendant reasoned that absent a unanimity instruction, the jury could disagree on whether, as a matter of fact, he only drove the car or that he directly committed the robbery. After an extensive and thorough review of the unanimity problem, the court found *Melendez* was incorrect, and that no unanimity instruction was required. (*Id.* at p. 45.) Based on the general principle that there is no constitutional bar to jury disagreement on alternative legal theories so long as there is a unanimous conclusion the defendant has committed a single offense, the court in *Davis* stated its reason broadly: "[i]t is simply of no consequence that some jurors believe the defendant is guilty based on one theory while others believe he is guilty on another even when the theories may be based on very different and even contradictory conclusions concerning, for example, the defendant's basic intent in committing the crime." The court concluded that a unanimity instruction is "inappropriate . . . where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event." (*Ibid.*) Evidently because the court viewed the robbery as such an event, it concluded the possibility of disagreement involved only the alternatives that defendant aided and abetted or acted as a principal; since the difference was only in legal theory, there was no requirement of unanimity.

We join *Davis* in the conclusion that *Melendez* was incorrectly decided. *Davis* correctly concludes that the potential disagreement of the jury about what the defendant did is not important where the inconsistency is legally irrelevant, i.e., the disagreement about the acts does not undermine the unanimous legal conclusion that based on either act, the defendant has committed a single charged offense. (See, e.g., *People* v. *Nor Woods, supra,* 37 Cal.2d at p. 586.) Thus, on the facts of *Melendez* and of *Davis* no unanimity instruction was required because there is no legally significant

difference between acts that amount to aiding and abetting a single robbery, and acts which constitute the robbery itself; if either scenario is proven, the defendant is guilty of just one robbery. ■ For that reason, we agree with *Davis* that under established California law, no unanimity instruction is required to prevent a less than unanimous verdict where the evidence independently proves acts which support the defendant's liability either as a principal or as an aider and abettor. Therefore, we reject defendant's claim a unanimity instruction was required because the jury could have found her guilty as either principal or aider and abettor depending on their view of the facts.

■ However, though we agree with its result, we are not satisfied that the reasoning of *Davis* resolves the difficulty presented by cases in which the criminal statute under which the defendant is charged prescribes differing courses of conduct, proof of any of which is sufficient to establish the actus reus of the offense. Though *Davis* discusses *Schad* v. *Arizona, supra,* 501 U.S. __ [115 L.Ed.2d 555], at length, its holding does not address the question raised but not answered in *Schad.* As we have discussed, although as a general principle there is no unanimity requirement where a defendant is charged with and the evidence proves only a single offense which may be committed in alternative ways, there is nonetheless a recognized due process limitation on the degree to which it is proper to include disparate factual elements under the rubric of a single offense, and then to plead and prove two or more of those alternatives without any assurance the jury will agree on any one of them. To determine when due process is implicated, the plurality in *Schad* adopted a "fundamental fairness" model which looks to traditional offense groupings, while the dissent would have imposed a unanimity requirement whenever the state "invoke[d] more than one statutory alternative, each with different specified elements." (*Id.* at p. __ [115 L.Ed.2d at p. 570] (plur. opn. of Souter, J.), *id.* at p. __ [115 L.Ed.2d at p. 581 (dis. opn. of White, J.).) Under either model, the language of *Davis* which would authorize a nonunanimous verdict whenever the verdict is based on "one discrete criminal event" (*People* v. *Davis, supra,* 8 Cal.App.4th at p. 45), is too broad absent some statement of the standard by which the criminality of the "event" is established. The Legislature is free to make criminal a broad variety of events, some of which may consist of a number of acts taking place over time. (See, e.g., *People* v. *Jones, supra,* 51 Cal.3d at pp. 321-322 [resident child molester statute].) For that reason, the *Davis* standard fails to address the problem created where the criminal event as defined by statute, as in this case, may consist of different alternative acts which may occur in different places and at different times. Under either view taken in *Schad,* the application of such a statute may require some assurance of unanimity to avoid the due process concerns expressed by all the

members of the court in that case, either because the statute combines disparate and nontraditional factual elements into a single offense, or because it offers alternative means to conviction, each with their own distinct sets of elements.

Here, as we have discussed, California's forgery statute defines the offense in the alternative; if the defendant either forges the instrument in question or utters it, the defendant is guilty of forgery so long as either or both acts were done with the intent to defraud. The evidence in this case supported jury conclusions that defendant both forged and uttered the checks in question or, assuming the jury believed part of the evidence but not all, that the defendant committed one act or the other. We therefore must decide whether the trial court erred by failing to ensure jury unanimity on the specific acts which supported each forgery conviction. We consider two questions; first, whether under established principles announced in California cases a unanimity instruction was required in this case, and second, if not, whether due process nonetheless required one. We conclude that the instruction was not required for either reason.

First, we find that under the forgery statute, forging and uttering are different legal theories under which a jury may find the defendant guilty of the generic statutory offense of forgery. Thus, no jury unanimity is required as to whether the defendant's conduct falls into either or both categories; in any case, the jury is unanimous that by one means or another, the defendant has committed a single forgery. (See *People* v. *Luizzi* (1960) 187 Cal.App.2d 639 [9 Cal.Rptr. 842] [crime of forgery complete on proof of either fraudulent making or passing of a false document with intent to defraud].) We conclude that under well-established principles, no unanimity instruction is required as to a single count of forgery involving a single instrument, even though the evidence shows different acts of forging and acts of uttering.[5]

Second, we conclude that the statutory agglutination of these acts under the rubric of a single offense does not require a unanimity instruction to avoid a due process violation where the evidence shows both categories of acts in the prosecution of a single count arising out of the forging or uttering of a single instrument.[6] First and most important, there is a close relationship between the acts of forging and uttering a single

---

[5] Accordingly, we recommend to the editors of CALJIC that the Use Note to CALJIC No. 15.02 be amended.

[6] Of course, where the state charges fewer counts of forgery than the number of forged instruments shown by the evidence, a unanimity instruction may be required, as in any case where the information charges fewer offenses than are proved by the evidence and it cannot be assured that the jury will be unanimous as to which crime the defendant committed. (See, e.g., *People* v. *Ferguson, supra,* 129 Cal.App.3d at pp. 1020-1021.)

instrument. Both acts are linked by a common criminal objective, to obtain a fraudulent advantage through the submission of a falsified document. (See, e.g., *United States* v. *UCO Oil Co.* (9th Cir. 1976) 546 F.2d 833, 838 [no unanimity requirement where disparate statutory means are no more than different ways of accomplishing a single prohibited criminal objective]; and see *Crain* v. *United States* (1896) 162 U.S. 625, 636 [40 L.Ed. 1097, 1099-1100, 16 S.Ct. 952] [indictment not duplicative where defendant charged in one count with making and presenting false claim to United States].) Second, California's forgery statute does not impose a "freakish" definition with "no analogue" in history or criminal law. (*Schad* v. *Arizona, supra,* 501 U.S. at p. __ [115 L.Ed.2d at p. 571] (plur. opn. of Souter, J.).) The inclusion of forging and uttering as alternate factual elements of a single statutory offense in California dates to the first session of the California Legislature (Stats. 1850, ch. 99, § 73, p. 237) and is of even more ancient provenance in English law (see 2 Jones' Blackstone (1976) pp. 2462-2465 [dating similar forgery statutes to 5 Eliz., ch. 14 (1562)]). Nor are forging and uttering in effect differently defined though similar crimes, each with different elements. (*Schad, supra,* 501 U.S. at p. __ [115 L.Ed.2d at p. 581 (dis. opn. of White, J.)].) They are alternative physical acts which must be united with the common mental element of intent to defraud to support conviction of the single traditional crime of forgery. In that, the difference between them is analogous to the difference in factual detail as to "whether a defendant [in a burglary case] pried open a window with a screwdriver or a crowbar," a point on which the *Schad* court was agreed no unanimity would be required. (*Ibid.*)

We conclude California's forgery statute is not subject to a due process objection on the ground it combines disparate elements into a single offense. Because it does not offend fundamental fairness to allow disagreement between jurors whether a defendant has forged or uttered a single instrument so long as they agree the defendant did either with the intent to defraud, we conclude no unanimity instruction was required here. In light of that conclusion, we do not reach the arguments of the parties on the question whether the failure to give the instruction was prejudicial error.

III.*

. . . . . . . . . . . . . . . . . . . . . . . .

IV.

DISPOSITION

The convictions on counts 4, 5 and 7 are reversed and remanded for further proceedings. The convictions on counts 1, 2, 9, and 10 are affirmed.

---

*See footnote, *ante,* page 602.

The sentence is vacated in its entirety, and the case is remanded for resentencing. To avoid double punishment on resentencing, the court is directed to stay any sentence imposed on count 1. In addition, the court is to recalculate any custody credits to which defendant may be entitled.

Smith, Acting P. J., and Phelan, J., concurred.