Filed 6/29/21  P. v. Brown CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, <br>     Plaintiff and Respondent, <br> v. <br> MICHAEL WAYNE BROWN, <br>     Defendant and Appellant. | A157929 <br><br> (Humboldt County Super. Ct. No. CR1800585) |

A jury convicted Michael Wayne Brown of inflicting corporal injury on the mother of his children, Jane Doe, and of violating a protective order that prohibited him from having any contact with her.  He contends that the trial court erred by declining to instruct the jury on unanimity and by limiting the cross-examination of Doe.  We affirm.

### BACKGROUND

#### A.

Brown was charged by information with two counts arising from an incident on or about November 11, 2017: (1) inflicting corporal injury upon Doe that resulted in a traumatic condition (Pen. Code, § 273.5, subd. (a) (section 273.5(a))[1], with a special allegation that Brown had prior convictions

---

[1] Undesignated statutory references are to the Penal Code.

1

for the same crime; and (2) disobeying a protective or stay-away court order (§ 166, subd. (c)(2)), with a further allegation that the violation resulted in physical injury.

During her opening statement at trial, the prosecutor argued that the relationship between Doe and Brown was "marked by multiple episodes of domestic violence," including "three specifically" for which the jury would hear evidence. She then stated: "The one that we're kind of talking about the charges occurred on November 11, 2017."

Doe testified that she had an "off and on" relationship with Brown for eight to 10 years. They had three children together. On November 11, 2017, Brown showed up at her house and let himself in. Brown wanted Doe to get high with him. When Doe told him that she did not want to because she was leaving shortly for a family trip, they got into an argument. Doe's younger brother Skyler lived with her in the same house, but he was up the street at her older brother Jessie's house at the time.

When Doe tried to walk out of the room, Brown punched her in the face, grabbed her by the hair, and hit her in the head with a flashlight. He dragged Doe down to the ground, kicked her, and choked her. Doe ran out of the house, yelling for her older brother Jessie. As soon as she started yelling, Brown also ran from the house.

Doe contacted law enforcement. Jessie was walking down the street with some of his kids when Doe reached him. He stood with her until the deputy sheriff arrived. The deputy sheriff testified that there was a man with two small children near Doe when he arrived on the scene, but the man was walking away and said that he didn't see anything.

The deputy sheriff was unable to locate Brown that day. According to Doe, Brown attacked her "a couple times" between the November 11, 2017 incident and his subsequent arrest, but she did not report those attacks.

Doe also testified regarding two incidents in 2016 where Brown beat her, one of which required hospital treatment. Brown stipulated to the fact that, in 2016, he was convicted of two section 273.5(a) violations and served with a criminal protective order that prohibited him from having any contact with Doe.

On cross-examination, defense counsel questioned Doe regarding details in her trial testimony that were purportedly omitted from her November 11, 2017 statement to the deputy sheriff, including that Brown had asked Doe to get high with him. Doe responded that she was "just describing" to the deputy sheriff that she was attacked, but "didn't think about why" she was attacked until later. Defense counsel questioned Doe about her admission during a preliminary hearing in 2012 that she had lied to police officers regarding an incident involving Brown. She testified that she had lied because Brown had asked her to "get him off" and that if she lied, he "wouldn't beat on [her] no more." Defense counsel also questioned Doe regarding her previous drug use and an active warrant for her arrest related to a purported drug possession incident on November 3, 2017.

Defense counsel later asked Doe: "Now, you indicated that you were assaulted by Mr. Brown previously. And he's admitted to assaulting you in court. Have you ever been physically assaulted by anybody else besides Mr. Brown?" The prosecutor objected on relevance grounds. Outside of the presence of the jury, defense counsel argued that he sought to "confront and examine the alleged victim about other individuals that she reported in and around the area that night[.]" Defense counsel stated that he was

3

"specifically interested" in Doe's younger brother Skyler, as Skyler was nearby when the November 11, 2017 incident occurred and had previously been convicted of battery as well as a felony section 273.5(a) violation, both of which can include a victim who is a cohabitant of the offender. (§§ 243, subd. (e)(1); 273.5, subd. (b)(2).) The trial court sustained the objection.

Audio recordings of various jail calls between Doe and Brown were admitted into evidence. In one call, Doe expressed her concern that Brown was "gonna get out and do the same thing to [her]." Brown responded: "No. That's not gonna happen." In another call, Brown expressed that he was tired of jail and being "in and out." Doe stated: "But it's your actions that get you there." Brown responded: "I know. I'm tryin' to change."

**B.**

At the prosecutor's request, the trial court gave the jury an instruction based on CALCRIM No. 207: "It is alleged that the crime occurred on or about November 11th, 2017. The People are not required to prove that the crime took place exactly on that day but only that it happened reasonably close to that day."

Defense counsel also requested that the verdict form include the date of the incident to avoid any confusion from the jury, as there were "two other incidents" involving the parties. The trial court granted the request. The verdict form identified the date of the charged offenses as "on or about November 11, 2017."

During her closing argument, the prosecutor addressed the elements of the section 273.5(a) charge. As to the November 11, 2017 date, she stated: "[N]ow, granted [Doe] was not great with dates, as it was over two years ago and there have been multiple incidents between her and the defendant. But you know that it was November 11th, 2017 because the officer was able to

4

come in and testify that that was the date he contacted her, and that was the most recent event that we have been discussing through this trial."

## C.

The jury convicted Brown on both counts and found true the special allegation that Brown had two prior section 273.5(a) convictions, as well as the further allegation that Brown's violation of the court order resulted in physical injury. Brown was sentenced to an aggregate six-year prison term.

## DISCUSSION

## A.

Brown claims the trial court had a sua sponte duty to instruct the jury on unanimity given Doe's testimony that Brown attacked her "a couple times" between the November 11, 2017 incident and his arrest. Specifically, he contends that the jurors could have based their findings of guilt on either the November 11, 2017 incident or these subsequent, uncharged assaults. We conclude there was no error.

## 1.

A criminal defendant has the right to a unanimous jury verdict. (Cal. Const., art. I, § 16; *People v. Jones* (1990) 51 Cal.3d 294, 321.) An instruction on unanimity is designed to prevent the jury from amalgamating evidence of multiple offenses and thus averts the possibility that "the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed." (*People v. Sutherland* (1993) 17 Cal.App.4th 602, 612.) The trial court has a sua sponte duty to provide an instruction on unanimity where (1) the evidence shows more than one act to support a single charged offense; and (2) the prosecution fails to elect the particular act it is using to prove the charged offense. (*People v. Russo* (2001) 25 Cal.4th

1124, 1132 (*Russo*).)  We review Brown's assertion of instructional error de novo.  (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568.)

**2.**

The record does not establish either of the two prerequisites for a unanimity instruction.  (See *Russo, supra,* 25 Cal.4th at p. 1132.)

First, the evidence did not suggest two discrete crimes that may have divided the jury.  (*Russo, supra,* 25 Cal.4th at p. 1135.)  Doe's testimony included only a general reference to other, unreported attacks by Brown between the November 11, 2017 incident and his arrest.  She did not testify in any detail regarding these other attacks, including whether she had even sustained any injuries.  Her brief, vague reference to these incidents created no risk that the jury would be divided on which act supported the crimes.

Second, the prosecutor elected to use the November 11, 2017 incident to prove the charges to the jury.  (*Russo, supra,* 25 Cal.4th at p. 1132.)  This was clear from the outset.  The information charged Brown with offenses committed "on or about November 11, 2017."  In her opening statement, the prosecutor explained that the jury would hear evidence regarding other episodes of domestic violence but that the charges in this case stemmed from the November 11, 2017 incident.  The CALCRIM No. 207 instruction provided that the crime occurred "on or about November 11th, 2017."  The verdict form similarly required the jury to make a finding on each of the two charged offenses that occurred "on or about November 11, 2017."  The prosecutor's closing argument reiterated that the jury was tasked with deciding whether the November 11, 2017 incident established the elements of the charged offenses.  This election obviated any duty of the trial court to instruct on unanimity.  (See *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1539.)

6

**B.**

Brown argues that the trial court violated his rights to confrontation and an opportunity to present a complete defense by sustaining the prosecutor's objection to a question during the cross-examination of Doe. We reject the argument.

**1.**

The constitutional right of confrontation "includes the right to cross-examine adverse witnesses on matters reflecting on their credibility." (*People v. Quartermain* (1997) 16 Cal.4th 600, 623 (*Quartermain*).) The confrontation clause, however, guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (*Delaware v. Fensterer* (1985) 474 U.S. 15, 20.) Trial courts retain wide latitude to impose reasonable limits on cross-examination where, for example, the testimony is only marginally relevant. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) A trial court's limitation on cross-examination pertaining to the credibility of a witness violates the confrontation clause only when "a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted." (*Quartermain, supra*, 16 Cal.4th at p. 624.)

The federal Constitution also guarantees criminal defendants " ' "a meaningful opportunity to present a complete defense." ' " (*Nevada v. Jackson* (2013) 569 U.S. 505, 509.) While this guarantee "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote," a trial court is still permitted to exclude evidence under well-established rules of evidence. (*Holmes v. South Carolina* (2006) 547 U.S. 319, 326.)

We review evidentiary rulings for abuse of discretion. (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.)

## 2.

Brown first contends that the trial court violated his confrontation right by depriving him of the opportunity to question Doe regarding whether she had been physically assaulted by anyone other than Brown. He argues that the question would have allowed the jury to evaluate Doe's "hotly contested credibility" on her "totally uncorroborated accusation" that Brown attacked her on November 11, 2017.

The trial court was well within its discretion to sustain the prosecutor's objection. Brown's argument rests on speculation: that Doe might have answered yes to the question regarding physical assaults committed by others, and that the man who "fled" when the deputy sheriff arrived might have been Skyler, not Jessie. "[E]xclusion of evidence that produces only speculative inferences is not an abuse of discretion." (*People v. Babbitt* (1988) 45 Cal.3d 660, 684; see Evid. Code, § 352.)

Moreover, the court allowed defense counsel to make a full-scale attack on Doe's credibility by suggesting discrepancies between her statement to the deputy sheriff and her trial testimony and by questioning her on her purported false statement to police officers in 2012, her previous drug use, and the active warrant for her arrest. A reasonable jury would not have received a significantly different impression of Doe's credibility had the prosecutor's objection to the question been overruled. (*Quartermain, supra,* 16 Cal.4th at pp. 623–624.) The trial court's refusal to permit the question did not improperly circumscribe Brown's right to confrontation.

## 3.

Similarly, the trial court's ruling on the objection did not violate Brown's right to present a complete defense. He claims that the question regarding other physical assaults would have yielded third party culpability evidence pointing to Skyler as Doe's assailant on November 11, 2017. Again, we disagree.

To be admissible, third party evidence "need not show 'substantial proof of a probability' that the third person committed the act; it need only be capable of raising a reasonable doubt of defendant's guilt. At the same time, we do not require that any evidence, however remote, must be admitted to show a third party's possible culpability." (*People v. Hall* (1986) 41 Cal.3d 826, 833.) Evidence of "mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." (*Ibid.*)

We find *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) instructive here. In that case, the defendant sought to admit evidence of third party culpability for the victim's murder, as the third party had previously confronted the victim, tried to get her fired from her job, visited her house that same day, and lived within walking distance of the murder scene. (*Id.* at p. 598.) *Clark* concluded that the trial court did not abuse its discretion in excluding the evidence, as it did not show anything more than motive or opportunity, and it failed to link the third party to the actual murder. (*Ibid.*)

So too here. Brown argues that Skyler could have been Doe's assailant on November 11, 2017 because he had "committed assaultive behavior in the past" and was "in the area" where Doe was assaulted. At most, these facts showed only opportunity and motive. (*Clark*, *supra*, 63 Cal.4th at p. 598.)

9

Brown proffered no evidence whatsoever linking Skyler to the November 11, 2017 assault.  (*Ibid.*)

In contrast to Brown's speculative hunch that Skyler was the culprit, Doe testified unequivocally that Brown attacked her on November 11, 2017. Brown appeared to concede his guilt during the jail calls with Doe.  Doe also testified that Skyler was at Jessie's house during the incident, and that Jessie was the person who was on the street with her when the deputy sheriff arrived.  Nothing in the record suggests that the court's routine evidentiary ruling deprived Brown of evidence raising a reasonable doubt of defendant's guilt.  (*People v. Hall*, *supra*, 41 Cal.3d at p. 833.)

In sum, we conclude that the trial court did not abuse its discretion in sustaining the relevance objection.

### DISPOSITION

The judgment is affirmed.

_____
BURNS, J.

We concur:

_____
NEEDHAM, ACTING P.J.

_____
RODRIGUEZ, J.*

A157929

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11